IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BEEBON INTERNATIONAL COMPANY, INC., a foreign corporation and citizen of the Republic of Korea,<br><br>    Plaintiff,<br><br>    v.<br><br>OAKLEY INDUSTRIES COMPANY, LLC, a Colorado limited liability company,<br><br>    Defendant. | No. 1:11-cv-5410<br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiff, BEEBON INTERNATIONAL COMPANY, INC., a foreign corporation of the Republic of Korea ("BeeBon"), complains of the Defendant, OAKLEY INDUSTRIES COMPANY, LLC, a Colorado limited liability company ("Oakley"), stating in support as follows:

### INTRODUCTION

1. This is a complaint to recover damages arising from breach of implied warranties of fitness for a particular purpose, breach of implied warranties of merchantability, and breach of contract.

### PARTIES

2. BeeBon is a foreign corporation and is a citizen of the Republic of Korea with its principal place of business in Seoul.

3. Oakley is a Colorado limited liability company with its principal place of business in Englewood, Colorado and a manufacturing plant located in Niles, Illinois.

## JURISDICTION AND VENUE

4. Jurisdiction is proper pursuant to 28 USC § 1332(a)(2), because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the claims are between a citizen of Colorado and a citizen of the Republic of Korea.

5. Venue lies in the Northern District of Illinois, Eastern Division, pursuant to 28 USC § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred and a substantial part of property that is the subject of the action is situated in this judicial district.

## FACTS COMMON TO ALL COUNTS

6. BeeBon is a supplier of Incoloy 840 high nickel stainless steel tubes ("Tubes") to the heating element industry in Korea.

7. Beebon's customers are Korean heating element manufacturer and distributors, which use the Tubes in the production of heating elements for, *inter alia*, refrigerators.

8. At all relevant times, Beebon's two main customers were Hankyung Electronics, Inc. ("Hankyung") and Canaan Electronics, Inc. ("Canaan"), which purchased the Tubes from BeeBon for use in refrigerator heating elements.

9. At all relevant times, Hankyung and Canaan supplied refrigerator heating elements to, *inter alia*, Samsung Electronics, Inc. and LG Electronics, Inc., which have rigorous quality control requirements.

10. Oakley is a manufacturer and supplier of the Tubes. At all relevant times, Oakley manufactured the Tubes in Niles, Illinois. Oakley is an industry leader in supplying machines and Tubes to the heating element industry.

### FACTS COMMON TO COUNTS I – III
### (HANKYUNG PURCHASE ORDERS)

11. On or about November 25, 2009 and December 22, 2009, BeeBon submitted purchase orders to Oakley for the purchase of Tubes for resale to Hankyung ("Hankyung Purchase Orders"), which identify Hankyung as the final customer in Korea for which the Tubes were intended. True and accurate copies of the Hankyung Purchase Orders are attached hereto as **Exhibits 1 and 2**.

12. Subsequently, Oakley manufactured the Tubes in Niles, Illinois.

13. At the time Oakley manufactured the Tubes, it was aware that the Tubes were to be used in the manufacture of heating elements, which were to be incorporated into refrigerators and other consumer products in the Korean market.

14. Specifically, Oakley was aware that the Tubes would be used in refrigerator heating elements in the Korean market, because:

   a. Oakley's senior management visited Hankyung's factory in Korea in or about July, 2009;

   b. Prior to the submission of the Hankyung Purchase Orders, BeeBon and Oakley had numerous oral and written communications discussing the specifications and intended end use of the Tubes;

   c. The Hankyung Purchase Orders specify the required dimensions and tolerances of the Tubes; and

   d. At all relevant times, BeeBon's website identified the end use of the heating elements in which the Tubes were used.

15. Oakley submitted invoices to BeeBon for the Tubes purchased on November 25, 2009 ("November Order") and December 22, 2009 ("December Order"), and BeeBon paid the invoices in full.

16. Hankyung received the November Order of Tubes in or about January, 2010. Hankyung received the December Order of Tubes in or about March, 2010.

17. Both the November Order and December Order of tubes were materially defective. Both shipments of the Tubes had material defects that led to the development of extraordinary pinholes and fine cracks during normal and typical processing of the Tubes, which in turn caused a large number of failures and rejections in Hankyung's heating element production.

18. Hankyung first started using the Tubes from the November Order in March, 2010, and it discovered the defects in the Tubes at that time.

19. In or about March, 2010, BeeBon seasonably notified Oakley that the November Order was defective. BeeBon also reported to Oakley that due to the defects in the November Order, Hankyung only utilized approximately 75% of the November Order.

20. In or about June 2010, Hankyung agreed to try to utilize the Tubes from the December Order, but it ultimately found similar defects as in the November Order, involving material defects that had led to extraordinary pinholes and fine cracks developing during the normal and typical processing of the Tubes, which in turn caused a large number of failures and rejections in Hankyung's heating element production.

21. On or about September 8, 2010, BeeBon seasonably notified Oakley that the December Order was defective.

22. The defects were confirmed by an independent testing lab, which BeeBon had engaged, and the results of the testing were presented to Oakley.

23. Oakley discussed with BeeBon problems that it had experienced with other Tubes made in its facilities during the relevant period of time and presented results from Oakley's independent testing lab to BeeBon.

24. Hankyung ordered BeeBon to remove the remaining defective Tubes from its factory.

25. Thereafter, BeeBon seasonably notified Oakley that it rejected the remaining unused Tubes from both the November and December Orders, and it was returning them to Oakley.

26. Oakley accepted the Tubes and paid for the shipping of the Tubes from Korea to the Oakley facility in Colorado.

27. Upon information and belief, the defective Tubes are in the possession of Oakley, and BeeBon has demanded that Oakley not dispose or destroy the Tubes.

**FACTS COMMON TO COUNTS IV – VI**
**(CANAAN PURCHASE ORDER)**

28. On or about August 18, 2009, BeeBon submitted a purchase order to Oakley for the purchase of Tubes for resale to Canaan ("Canaan Purchase Order"), which identifies Canaan as the final customer in Korea for which the Tubes were intended. A true and accurate copy of the Canaan Purchase Order is attached as **Exhibit 3**.

29. Subsequently, Oakley manufactured the Tubes in Niles, Illinois.

30. At the time Oakley manufactured the Tubes, it was aware that the Tubes were to be used in the manufacture of heating elements, which were to be incorporated into refrigerators and other consumer products in the Korean market.

31. Specifically, Oakley was aware that the Tubes would be used in refrigerator heating elements in the Korean market, because:

5

      a. Oakley's senior management visited Canaan's factory in Korea in or about July, 2009;

      b. Prior to the submission of the Canaan Purchase Order, BeeBon and Oakley had numerous oral and written communications discussing the specifications and intended end use of the Tubes;

      c. The Canaan Purchase Order specifies the required dimensions and tolerances of the Tubes; and

      d. At all relevant times, BeeBon's website identified the end use of the heating elements in which the Tubes were used.

32. Oakley submitted invoices to BeeBon for the Tubes purchased pursuant to the Canaan Purchase Order, and BeeBon paid the invoice in full.

33. Canaan discovered that the Tubes were defective, and BeeBon informed Oakley that Canaan had experienced difficulty processing the defective Tubes in the Canaan order.

34. At least part of the order of the Tubes did not meet the specifications of the Canaan Purchase Order, which resulted in difficultly in Canaan's processing of the Tubes and subsequently to BeeBon's loss of Canaan's business.

## COUNT I –
## BREACH OF THE IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE
## (HANKYUNG PURCHASE ORDERS)

35. Plaintiff restates and re-alleges the allegations of Paragraphs 1 through 27 as Paragraph 35.

36. BeeBon and Oakley are merchants.

37. BeeBon and Oakley entered into agreements for the sale of goods. The agreements for the sale of goods are evidenced by the Hankyung Purchase Orders for Tubes.

38. At the time of receipt of the Hankyung Purchase Orders, Oakley had reason to know of the particular purpose for which the Tubes were required.

39. BeeBon, as buyer of the Tubes, was relying on Oakley's skill and judgment to furnish suitable Tubes.

40. The Tubes were not fit for the particular purpose for which they were used, because they contained defects that led the Tubes to develop extraordinary pinholes and fine cracks during normal and typical processing of the Tubes, which in turn caused a large number of failures and rejections in Hankyung's heating element production.

41. Because the goods were defective, Oakley breached its implied warranty of fitness for a particular purpose.

42. As a result of Oakley's breach of its implied warranty of fitness for a particular purpose, BeeBon has been damaged in an amount in excess of $75,000.00.

43. At all times relevant hereto, BeeBon has complied with the terms of its agreement with Oakley.

WHEREFORE, Plaintiff, BEEBON INTERNATIONAL COMPANY, INC., respectfully requests this Honorable Court to enter a judgment against Defendant, OAKLEY INDUSTRIES COMPANY, LLC, as follows:

    A. Enter an award of damages in excess of $75,000.00 in an amount to be proven at trial;

    B. Enter an award of costs of this proceeding, prejudgment interest, and for any other relief the Court deems just and equitable.

### COUNT II –
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (HANKYUNG PURCHASE ORDERS)

44. Plaintiff restates and re-alleges the allegations of Paragraphs 1 through 27 as Paragraph 44.

45. BeeBon and Oakley entered into agreements for the sale of goods. The agreements for the sale of goods are evidenced by the Hankyung Purchase Orders for Tubes.

46. Oakley is a merchant of Tubes.

47. The Tubes were not of merchantable quality, because they contained material defects that led the Tubes develop to extraordinary pinholes and fine cracks during normal and typical processing of the Tubes, which in turn caused a large number of failures and rejections in Hankyung's heating element production.

48. The defects in the Tubes existed when the Tubes left Oakley's control.

49. The Tubes failed to perform in the manner reasonably to be expected in light of their nature and intended function.

50. Because the goods were not of merchantable quality, Oakley breached its implied warranty of merchantability.

51. As a result of Oakley's breach of its implied warranty merchantability, BeeBon has been damaged in an amount in excess of $75,000.00.

52. At all times relevant hereto, BeeBon has complied with the terms of its agreement with Oakley.

WHEREFORE, Plaintiff, BEEBON INTERNATIONAL COMPANY, INC., respectfully requests this Honorable Court to enter a judgment against Defendant, OAKLEY INDUSTRIES COMPANY, LLC, as follows:

    A. Enter an award of damages in excess of $75,000.00 in an amount to be proven at trial;

    B. Enter an award of costs of this proceeding, prejudgment interest, and for any other relief the Court deems just and equitable.

## COUNT III –
## BREACH OF CONTRACT
## (HANKYUNG PURCHASE ORDERS)

53. Plaintiff restates and re-alleges the allegations of Paragraphs 1 through 27 as Paragraph 53.

54. BeeBon and Oakley entered into agreements for the sale of goods. The agreements for the sale of goods are evidenced by the Hankyung Purchase Orders for Tubes.

55. The Hankyung Purchase Orders specify the required dimensions and tolerances of the Tubes.

56. Oakley materially breached its agreements with BeeBon, because it sold Tubes to BeeBon that contained material defects that led to the development of extraordinary pinholes and fine cracks during normal and typical processing of the Tubes, which in turn caused a large number of failures and rejections in Hankyung's heating element production.

57. Because the Tubes contained said material defects, the Tubes did not meet the required specifications of the Hankhung Purchase Orders.

58. BeeBon at all times has complied with the terms of the contract with Oakley.

59. As a result of Oakley's breach of the contract, BeeBon has been damaged in an amount in excess of $75,000.00, including loss of business with its customer Hankyung.

WHEREFORE, Plaintiff, BEEBON INTERNATIONAL COMPANY, INC., respectfully requests this Honorable Court to enter a judgment against Defendant, OAKLEY INDUSTRIES COMPANY, LLC, as follows:

- A. Enter an award of damages in excess of $75,000.00 in an amount to be proven at trial, plus damages for lost business in an amount to be determined at trial;
- B. Enter an award of costs of this proceeding, prejudgment interest, and for any other relief the Court deems just and equitable.

9

## COUNT IV -
## BREACH OF THE IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE
## (CANAAN PURCHASE ORDER)

60. Plaintiff restates and re-alleges the allegations of Paragraphs 1 through 10 and Paragraphs 28 through 34 as Paragraph 60.

61. BeeBon and Oakley are merchants.

62. BeeBon and Oakley entered into an agreement for the sale of goods. The agreement for the sale of goods is evidenced by the Canaan Purchase Order for Tubes.

63. At the time of receipt of the Canaan Purchase Orders, Oakley had reason to know of the particular purpose for which the Tubes were required.

64. BeeBon, as buyer of the Tubes, was relying on Oakley's skill and judgment to furnish suitable Tubes.

65. The Tubes were not fit for the particular purpose for which they were used, because at least part of the order for the Tubes did not meet the specifications of the Canaan Purchase Order.

66. Because the goods were defective, Oakley breached its implied warranty of fitness for a particular purpose.

67. As a result of Oakley's breach of its implied warranty of fitness for a particular purpose, BeeBon has been damaged in an amount in excess of $75,000.00.

68. At all times relevant hereto, BeeBon has complied with the terms of its agreement with Oakley.

WHEREFORE, Plaintiff, BEEBON INTERNATIONAL COMPANY, INC., respectfully requests this Honorable Court to enter a judgment against Defendant, OAKLEY INDUSTRIES COMPANY, LLC, as follows:

A. Enter an award of damages in excess of $75,000.00 in an amount to be proven at trial;

B. Enter an award of costs of this proceeding, prejudgment interest, and for any other relief the Court deems just and equitable.

## COUNT V –
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (CANAAN PURCHASE ORDER)

69. Plaintiff restates and re-alleges the allegations of Paragraphs 1 through 10 and Paragraphs 28 through 34 as Paragraph 69.

70. BeeBon and Oakley entered into an agreement for the sale of goods. The agreement for the sale of goods is evidenced by the Canaan Purchase Order for Tubes.

71. Oakley is a merchant of Tubes.

72. The Tubes were not of merchantable quality, because at least part of the order for the Tubes did not meet the specifications of the Canaan Purchase Order.

73. The defects in the Tubes existed when the Tubes left Oakley's control.

74. The Tubes failed to perform in the manner reasonably to be expected in light of their nature and intended function.

75. Because the goods were not of merchantable quality, Oakley breached its implied warranty of merchantability.

76. As a result of Oakley's breach of its implied warranty merchantability, BeeBon has been damaged in an amount in excess of $75,000.00.

77. At all times relevant hereto, BeeBon has complied with the terms of its agreement with Oakley.

WHEREFORE, Plaintiff, BEEBON INTERNATIONAL COMPANY, INC., respectfully requests this Honorable Court to enter a judgment against Defendant, OAKLEY INDUSTRIES COMPANY, LLC, as follows:

A. Enter an award of damages in excess of $75,000.00 in an amount to be proven at trial;

B. Enter an award of costs of this proceeding, prejudgment interest, and for any other relief the Court deems just and equitable.

## COUNT VI –
## BREACH OF CONTRACT
## (CANAAN PURCHASE ORDER)

78. Plaintiff restates and re-alleges the allegations of Paragraphs 1 through 10 and Paragraphs 28 through 34 as Paragraph 78.

79. BeeBon and Oakley entered into an agreement for the sale of goods. The agreement for the sale of goods is evidenced by the Canaan Purchase Order for Tubes.

80. The Canaan Purchase Order specifies the required dimensions and tolerances of the Tubes.

81. Oakley materially breached its agreements with BeeBon, because it sold Tubes to BeeBon that did not meet the required dimensions and tolerances specified in the Canaan purchase orders.

82. The Tubes did not meet the required specifications, because at least part of the order for the Tubes did not meet the specifications of the Canaan Purchase Order.

83. BeeBon at all times has complied with the terms of the contract with Oakley.

84. As a result of Oakley's breach of the contract, BeeBon has been damaged in an amount in excess of $75,000.00, including loss of business with its customer Canaan.

WHEREFORE, Plaintiff, BEEBON INTERNATIONAL COMPANY, INC., respectfully requests this Honorable Court to enter a judgment against Defendant, OAKLEY INDUSTRIES COMPANY, LLC, as follows:

A. Enter an award of damages in excess of $75,000.00 in an amount to be proven at trial, plus damages for lost business in an amount to be determined at trial;

B. Enter an award of costs of this proceeding, prejudgment interest, and for any other relief the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands that all issues be tried by a jury of eight (8) persons.

Respectfully submitted,
BEEBON INTERNATIONAL COMPANY, INC.,

By: /s/ Brianna M. Sansone
    One of its attorneys

John M. Riccione (ARDC #6209375)
Brianna M. Sansone (ARDC #6298677)
ARONBERG GOLDGEHN DAVIS & GARMISA
330 North Wabash, Suite 1700
Chicago, Illinois 60611
P: (312) 828-9600
jriccione@agdglaw.com
bsansone@agdglaw.com